UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| THOMAS J. SHAMPINE, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 3:20-CV-380-CEA-JEM |
| US FOODS, INC., | ) ) ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiff's Motion *in Limine* to Preclude the Expert Report and Opinion Testimony of Ginger McRae, SPHR, SHRM-SCP [Doc. 54]. Defendant responded in opposition [Doc. 60]. Plaintiff did not file a reply, and the time for doing so has passed. E.D. Tenn. L.R. 7.1(a). The motion is therefore ripe for adjudication. For the reasons explained below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion [**Doc. 54**].

**I.     BACKGROUND**

Plaintiff filed the Complaint in this case on August 25, 2020, and he later amended on December 6, 2021 [Doc. 25]. The First Amended Complaint ("Amended Complaint") alleges violations of the Americans with Disabilities Act of 1990, as amended ("ADAA") 42 U.S.C. § 12101 *et seq*., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., the Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 8-50-103, and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-20-401 *et seq*. [Doc. 25 ¶ 1].[1]

---

[1] On June 10, 2022, Plaintiff moved to amend his Amended Complaint "to delete any claims for discrimination based on sex, race, or sexual orientation" [Doc. 50 p. 2]. Plaintiff states that he

According to the allegations in the Complaint, Plaintiff began his employment with Defendant in 2003, and between 2003 through 2018, he successfully performed the duties as the business development manager, district sales manager, and restaurant operations consultant [*Id*. ¶¶ 9–10]. At some point, Plaintiff was diagnosed with Parkinson's disease, and while this disease causes him physical and mental disabilities, he was able to perform all the essential functions of his job duties as restaurant operations consultant and new business manager [*Id*. ¶ 13]. He alleges that his superiors knew that he had been diagnosed with Parkinson's disease [*Id*.].

In May 2016, Plaintiff applied for the position of vice president for local sales ("VP Local Sales") [*Id*. ¶ 12; Doc. 25-3]. Plaintiff alleges that he was not afforded the same fair interview process and opportunities as other candidates for the VP Local Sales position and that Defendant awarded the position to an individual who was not disabled and much younger than him [Doc. 25 ¶ 14]. This employment decision, according to Plaintiff, was part of Defendant's pattern of disability and age discrimination [*Id*.].

On December 3, 2018, Defendant promoted Plaintiff to the position of new business manager–Knoxville/Chattanooga [*Id*. ¶ 15]. Later, in mid-July 2019, the Senior Manager of Corporate Investigations, Janeth Rubi ("Rubi"), and the Director of Corporate Investigations, Scott Graham ("Graham"), telephoned Plaintiff to request a meeting [*Id*. ¶ 16]. Although they originally refused to tell Plaintiff the subject of the meeting, they eventually told him that a customer, Julie Buhler ("Buhler"), had filed a complaint against him [*Id*.]. Plaintiff says that they declined, however, to provide him with any details about the complaint [*Id*.].

---

"had to drop his claims for sex and race discrimination because the Court ruled that his deposition requests came too late in the discovery period (but before it had expired) and would prejudice US Foods because it was too late" [Doc. 63 p. 5]. The Court has not yet ruled on Plaintiff's motion to amend.

2

Plaintiff met with Rubi and Graham on July 19, 2019 [*Id*. ¶ 17]. Defendant's in-house legal counsel, Stacey Moore ("Moore"), attended the meeting via telephone [*Id*.]. During the meeting, Plaintiff says that they interrogated him about Buhler's complaint and his expense report and business practices [*Id*.]. At the time of the meeting, they were aware of his Parkinson's disease and that he required medication to control it [*Id*.]. Despite being aware of his disease, Plaintiff claims that they required him to respond to specific and detailed questions and without any advance notice regarding the expense report or business practice issue [*Id*. ¶ 18]. Plaintiff alleges that the interrogation put him under intense pressure and anxiety, so much so that he needed a break to take more medication to control his Parkinson's symptoms [*Id*.]. According to Plaintiff, Defendant's representatives involved in the investigation, as well as Plaintiff's superiors, were aware that the medication adversely affects Plaintiff's memory and stamina [*Id*. ¶ 22].

After the July 19, 2019 meeting, Plaintiff claims that he made verbal and written pleas to Defendant's investigators and his superiors proclaiming his innocence with respect to Buhler's complaint and the allegations relating to his expense report and business practices [*Id*. ¶ 24]. On August 26, 2019, Defendant noticed Plaintiff to a meeting at a hotel conference room in Morristown, Tennessee [*Id*. ¶ 25]. Defendant's human resources business partner, Nathan Mize ("Mize"), and Moore attended the meeting [*Id*.]. The area president, Bill Ray ("Ray"), attended via telephone [*Id*.]. Mize stated that Defendant completed its investigation relating to Buhler's compliant, but the investigation "drew no conclusion," meaning that it found no evidence to support Buhler's allegations of sexual assault [*Id*. ¶¶ 25–26]. Mize reported, however, that the investigation revealed that Plaintiff violated other rules, such as staying at an unapproved Airbnb, failing to truthfully and accurately complete his expense reports, and failing to fully cooperate with the investigation [*Id*.]. Mize and Moore fired Plaintiff [*Id*.]. Plaintiff alleges that Moore instructed Mize not to respond to questions regarding who made the decision to terminate, who conducted

3

the investigation, the names of individuals who provided input to the decision makers, and the names of any witnesses [*Id.*]. According to Plaintiff, Defendant filled his position as the new business manager with an individual who does not have a disability and who is much younger than him [*Id.* ¶ 29].

Plaintiff claims that Defendant terminated his employment because of his disability and age [*Id.* ¶ 30]. Plaintiff alleges that Defendant was aware that his disability causes memory issues and fatigue, and given his disability, Defendant should have furnished him advance notice of the issues relating to Buhler's complaint and the expense report and business practices that were in question [*Id.* ¶ 31]. Such accommodations, according to Plaintiff, would have provided him with an opportunity to be fully prepared for the multiple-hour interrogation on July 19, 2019 [*Id.*]. Plaintiff accuses Defendant of "engag[ing] in deliberate and designed employment practices to attract, hire, promote, and retain individuals and employees on non-heterosexual sexual preference, non-Caucasian race, and female gender of which resulted in a pattern and practice of disparate treatment and impact on heterosexual Caucasian male employees, including [Plaintiff]" [*Id.* ¶ 32]. Plaintiff avers that he complied with all Defendant's policies and procedures, and Defendant engaged in disparate treatment against him "with respect to its investigation, due process and discipline, and in termination of his employment with respect to said business expenses and ethics policies" [*Id.* ¶ 33].

## II. PLAINTIFF'S MOTION TO EXCLUDE DEFENDANT'S EXPERT

Defendant has designated Ginger McRae ("McRae"), Esq., SPHR, SHRM-SCP, as an expert in this case [Doc. 60-2]. McRae has worked in the labor and employment area for over thirty-five years and in various roles, including as a judicial law clerk, attorney, in-house counsel, and as a human resources consultant [*Id.* at 1]. Since January 2001, she has been a human resources consultant and has served as an expert witness on employment policies and practices in

4

Case 3:20-cv-00380-CEA-JEM   Document 77   Filed 11/21/22   Page 4 of 20   PageID #: 1415

other cases [*Id*.]. Defendant retained McRae "to determine whether [its] policies and practices . . . with respect to conducting workplace investigations are consistent with generally accepted human resources practices" [*Id*. at 2]. In addition, McRae provides "an opinion as to whether the application of those policies and practices in the circumstances of this case was consistent with generally accepted human resources practices" [*Id*.].

McRae opines that Defendant established reasonable policies to guide investigations of employee conduct, its investigation of the Buhler complaint was consistent with generally accepted human resources practices, and that Plaintiff's challenges to the investigation do not show that the investigation was inconsistent with generally accepted human resources practices [*Id*. at 5–8]. To support her conclusions, McRae relies on her experience in the labor and employment area and various other sources, including the Equal Employment Opportunity Commission Guidance on Vicarious Employer Liability for Unlawful Harassment by Supervisors ("EEOC Guidance"), the Association of Workplace Investigations ("AWI") Journal, and the Association of Corporate Counsel's InfoPak on Internal Investigations [*Id*. at 5–6].

Plaintiff moves to exclude McRae's testimony, and Defendant responds in opposition [Docs. 55, 60]. Plaintiff did not reply, and the time to do so has passed. E.D. Tenn. L.R. 7.1(a).

### III. STANDARD OF REVIEW

"Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharmas., Inc.*, 509 U.S. 579, 589 (1993)). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court of the United States stated in *Daubert* that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. This standard "attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176–77 (6th Cir. 2009).

The factors relevant in evaluating the reliability of the testimony include: "whether a method is testable, whether it has been subjected to peer review, the rate of error associated with the methodology, and whether the method is generally accepted within the scientific community." *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 970–71 (M.D. Tenn. 2002) (citing *Daubert*, 509 U.S. at 593–94). The inquiry is "a flexible one," and these factors do not constitute a definitive checklist or test. *Kumho Tire Co.*, 526 U.S. at 138–39 (citing *Daubert*, 509 U.S. at 593); *see also Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 152 (3d Cir. 1999) (explaining that these factors "are simply useful signposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted").

"Although *Daubert* centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized

6

or technical, as opposed to scientific, knowledge." *Rose v. Sevier Cnty.*, No. 3:08-CV-25, 2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012) (citing *Kumho Tire Co.*, 526 U.S. at 138–39). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in the case." *Coffey*, 187 F. Supp. 2d at 70–71 (quoting *Daubert*, 509 U.S. at 593–94). The party offering the expert has the burden of proving admissibility. *Daubert*, 509 U.S. at 592 n.10.

The court will not "exclude expert testimony merely because the factual bases for an expert's opinion are weak." *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 729 (6th Cir. 2012) (quotation marks and citations omitted). Exclusion is the exception, not the rule, and "the gatekeeping function established by *Daubert* was never 'intended to serve as a replacement for the adversary system.'" *Daniels v. Erie Ins. Grp.*, 291 F. Supp. 3d 835, 840 (M.D. Tenn. Dec. 4, 2017) (quoting *Rose v. Matrixx Initiatives, Inc.*, No. 07–2404–JPM/tmp, 2009 WL 902311, at *7 (W.D. Tenn. Mar. 31, 2009)) (other quotations omitted). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Rule 702 does not "require anything approaching absolute certainty." *Daniels*, 291 F. Supp. 3d at 840 (quoting *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671–72 (6th Cir. 2010)).

District courts generally have "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 375 (quoting *Kumho Tire*, 526 U.S. at 152). Decisions by the district court are thus reviewed for an abuse of discretion. *See id.* (citing *Nelson v. Tenn. Gas Pipeline Co.*, 234 F.3d 244, 248 (6th Cir. 2001). "This deferential standard makes sense because *Daubert* establishes a 'flexible' test that considers many indicia of reliability[,]" and relevance will depend "on the particular science and the particular scientist before the court." *Id.* (citing *Kumho Tire*, 526 U.S. at 150).

7

## IV. ANALYSIS

Plaintiff argues that McRae's opinions are inadmissible pursuant to Rules 402, 403, and 702 of the Federal Rules of Evidence. He asserts McRae's opinions are unnecessary, irrelevant, unreliable, and more likely to confuse and mislead the jury for several reasons: (1) the claims in this case are driven by the facts such that scientific testimony or technique is not necessary; (2) McRae's report lacks material facts; (3) McRae opines on legal issues, provides legal citations, and engages in legal analysis, and her opinions attempt to usurp the role of the jury and resolve factual disputes; (4) McRae's expert report contains immaterial and highly prejudicial allegations that would only confuse the issues and mislead the jury; and (5) Defendant has already conclusively admitted that its alleged reasons for firing Plaintiff were pretextual [Doc. 54; Doc. 55 pp. 1–2].[2]

The Court has considered the parties' filings and McRae's expert report. The Court finds that the majority of McRae's opinions are reliable and relevant, and therefore, admissible in this action. The Court further finds that she provides a reasonable factual basis for her opinions. While the Court finds McRae's testimony that Defendant conducted an investigation consistent with generally accepted human resources standards does not usurp the jury's role, the Court will exclude McRae's opinions that Defendant "made findings consistent with the information gathered[] and took action consistent with the findings[,]" [Doc. 60-2 p. 9], as these opinions invade the province of the jury. Finally, at this juncture, the Court declines to determine whether McRae's expert report, or any part thereof, should be excluded under Rule 403.

---

[2] In support of its fifth reason, Plaintiff relies on its Requests for Admission ("RFAs"), which Defendant did not timely answer. On October 25, 2022, the Court granted Defendant's emergency motion to withdraw deemed admissions [Doc. 73]. While Plaintiff has filed an objection to that Memorandum and Order [Doc. 74], the Court finds it is not necessary to address this argument in light of the decision. To the extent the District Judge sustains Plaintiff's objection, Plaintiff may seek to file an appropriate motion addressing this issue.

A. Whether McRae's Opinions are Reliable and Relevant

Plaintiff states that this case is about intentional discrimination, meaning the claims are fact driven and do not require scientific theory or technique to assist the jury. Plaintiff also states that McRae's report is not grounded in the facts of the case nor based upon testable scientific theory or technique and would not be helpful to the trier of fact.

In response, Defendant argues that McRae's testimony is relevant and reliable and provides helpful insight with respect to internal investigations and employee discipline. Defendant acknowledges that McRae is not a scientific expert "to the extent that she does not use measurable data or peer reviewed experimentation to arrive at her conclusions," but it asserts that "*Daubert*, *Kumho Tire*, and their progeny make clear that experts like McRae are just as credible and valuable to a jury as scientific experts" [Doc. 60 p. 8]. The relevant question, according to Defendant, "is whether 'the standard applied by the expert is generally accepted in the relevant community'" [*Id.* (quoting *Kumho Tire*, 526 U.S. at 152)]. Defendant claims "there is no question that McRae's standards and methodologies are generally accepted in the field of human resources" given her background as a certified human resource professional, namely a SPHR and SHRM-SPC [*Id.* at 8–9, 12–16].

As articulated in *Kumho Tire*, courts must comply with their gatekeeping requirement in ensuring expert testimony is relevant and reliable, regardless of whether the expert's testimony is scientific, technical, or otherwise specialized. 526 U.S. at 152; *see also Tyus v. Urb. Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996) ("Social science testimony . . . must be tested to be sure that the person possesses genuine expertise in a field and that her court testimony 'adheres to the same standards of intellectual rigor that are demanded in [her] professional work.'" (quoting *Braun v. Lorillard Inc.*, 84 F.3d 230, 234 (7th Cir.1996))). Indeed, testimony does not need to be scientific or technical in the traditional sense to be admitted under Rule 702 or *Daubert*. *See* Fed. R. Civ.

9

P. 702(a) (explaining that an expert may testify if her "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"); *Kumho Tire*, 526 U.S. at 152 (finding that the gatekeeping obligations of determining reliability and relevancy established in *Daubert* apply with equal force to non-scientific experts but noting that the factors announced in *Daubert* are not definitive); *J.B-K.-1 v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 462 F. Supp. 3d 724, 732–33 (E.D. Ky. 2020) (admitting non-scientific expert testimony of a state-court judge as relevant and helpful to the trier of fact), *aff'd sub nom.*, *J. B-K. by E.B. v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 48 F.4th 721 (6th Cir. 2022). And "[n]ot all expert opinions are susceptible to scientific and methodological testing that can be replicated in a lab or confirmed through empirical analysis." *Salter v. Olsen*, No. 18-CV-13136, 2020 WL 4331537, at *4 (E.D. Mich. June 8, 2020), *report and recommendation adopted sub nom.*, *Salter v. City of Detroit*, No. 18-13136, 2020 WL 4284062 (E.D. Mich. July 27, 2020). The Sixth Circuit has recognized that "the four specific factors utilized in *Daubert* may be of limited utility in the context of non-scientific expert testimony[,]" and if the four factors "'were to be extended to outside the scientific realm, many types of relevant and reliable expert testimony—that derived substantially from practical experience—would be excluded.'" *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 334 (6th Cir. 2001) (quoting *United States v. Jones*, 107 F.3d 1147, 1158 (6th Cir. 1997)).

Here, McRae offers her specialized knowledge and relies on her decades of experience in human resources—along with other resources, including the EEOC Guidance, the AWI Journal, and the Association of Corporate Counsel's InfoPak on Internal Investigations—to render her opinions. Plaintiff has not sufficiently explained why McRae's experience and reliance on various sources, including the EEOC Guidance, is not sufficient under Rule 702, *Daubert*, and *Kumho*. In any event, based on McRae's extensive professional background and her reliance on these sources,

10

the Court finds McRae's testimony reliable. It also recognizes that courts have admitted similar expert testimony. *See Nelson v. Pace Suburban*, No. 17 C 7697, 2022 WL 1401529, at *3–5 (N.D. Ill. Mar. 21, 2022) (admitting human resources expert's testimony where expert relied upon EEOC and SRHM guidance in forming her opinions); *Saldana v. Tex. Dep't of Transp.*, No. A-14-CV-282-LY, 2015 WL 3952328, at *4 (W.D. Tx. June 29, 2015) ("Considering [the expert's] well-cited expert report, [the plaintiff] has shown [the expert's] opinion relies on professional sources and that her testimony will demonstrate the intellectual rigor that characterizes the practice in the human resource field.").

As for relevancy, Plaintiff claims that "McRae's opinion testimony and report regarding this discrimination case is not properly grounded in the facts of this case" [Doc. 55 p. 9].[3] But Plaintiff offers no support for this assertion.[4] Regardless, the Court disagrees because Plaintiff has put at issue how Defendant conducted its investigation. For example, Plaintiff alleges that Rubi and Graham refused to tell him the purpose of the July 19, 2019 meeting; that during the meeting, Defendant's representatives interrogated him; and that Defendant never provided him with an "opportunity to gather, review, or reference any reports or records that he was interrogated about—and subsequently terminated over" [Doc. 25 ¶¶ 16, 17, and 23]. In her report, McRae opines on the generally-accepted human resources practices and whether Defendant's investigation complied with those practices. McRae states that "[i]n her experience the subject of an investigation is not provided any information about the nature of the matter being investigated prior to the subject and

---

[3] Plaintiff asserts variations of this argument throughout his brief, and related aspects of this argument are addressed below. *See infra* Sections IV.B.–C.

[4] Plaintiff submits that an "expert's opinion must *relate to* an issue that is actually in dispute and must provide a valid scientific connection to the pertinent injury" [Doc. 55 p. 8 (quoting Margaret A. Berger, *Procedural Paradigms for Applying the* Daubert *Test*, 78 Minn. L. Rev. 1345, 1351 (1994))]. The law review article upon which Plaintiff relies, however, was published prior to the Supreme Court's decision in *Kumho Tire*.

third-party witness interviews" and she explains why [Doc. 60-2 pp. 7–8]. In light of Plaintiff's allegations, the Court finds that McRae's opinions are relevant to the issues in this case.

   B.   **Whether McRae Considered Material Facts**

Plaintiff asserts that McRae's testimony should be excluded because her opinions lack consideration or any mention of the material facts. Specifically, Plaintiff says that McRae does not mention Scott Tallent's ("Tallent") deposition testimony nor references any facts related to Plaintiff's comparator, Jason Ledford ("Ledford"). As for Tallent, a management level employee, he testified that Rubi investigated him at one point, and she tried to get him demoted from his position by making false or fabricated assumptions against him [Doc. 55 p. 9; Doc. 56 pp. 2–3]. Tallent further testified that if a subordinate stayed at an Airbnb and turned in the receipt, depending on the amount, he would talk to the subordinate rather than terminate him/her [Doc. 56 p. 4]. Tallent reviewed the employee handbook and did not find anything regarding employees staying at Airbnbs [*Id*. at 7]. As for Rubi, she testified that Ledford "engaged in the same or similar conduct as [Plaintiff]" [Doc. 55 p. 9]. Yet, Plaintiff asserts, Ledford, who has no known disabilities and is more than fifteen years younger than Plaintiff, sustained no disciplinary action.

Defendant responds that McRae's report contains a recitation of the facts from July 1, 2019, through August 26, 2019, including the investigation process, key decisionmakers, and locations, and references to Plaintiff's deposition testimony, pleadings in this action, Defendant's employee handbook, and other evidence from this case. With respect to Plaintiff's position that McRae's report lacks consideration or mention of material facts, including facts related to Ledford and Tallent, Defendant argues that Plaintiff offers no case law in support of his position. In addition, Defendant points out that Plaintiff did not take McRae's deposition, which Defendant asserts, would have given him the opportunity to ask about Tallent's deposition testimony and any alleged comparator evidence. In any event, Defendant states that Plaintiff's "references to Tallent and

12

Ledford are wholly irrelevant in this context" because McRae was not retained to analyze Rubi's conduct in unrelated investigations [Doc. 60 p. 10]. Defendant further states that McRae did consider statements from Tallent and Ledford because "McRae reviewed the investigative file for Defendant's Ethics and Compliance Case 2019-1726, the Shampine investigation, which included interviews with Tallent and Ledford" [*Id.*]. According to Defendant, Plaintiff may cross examine McRae on these facts.

"Where an expert's testimony amounts to 'mere guess or speculation,' the court should exclude his testimony, but where the opinion has a reasonable factual basis, it should not be excluded." *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993). "Rather, it is up to opposing counsel to inquire into the expert's factual basis." *Id.* (citation omitted). Plaintiff does not assert McRae's opinion is a mere guess or speculation; he challenges the factual basis of McRae's opinion. McRae's opinion, however, has a reasonable factual basis. She discusses that, consistent with Defendant's Prohibition Against Discrimination, Harassment, and Retaliation Policy, it initiated an investigation after a customer complained about Plaintiff [Doc. 60-2 p. 3]. McRae summarizes how Defendant conducted the investigation and why such methods were appropriate, relying on the EEOC Guidance, the AWI Journal, the InfoPak on Internal Investigations, and other resources [*Id.* at 4–8]. She reviewed the Amended Complaint, the customer complaint, Defendant's initial production of documents, Defendant's investigative file, and Plaintiff's deposition [*Id.* at 11].[5] The Court is satisfied that McRae's opinions have a reasonable factual basis.

It is well established that within the Sixth Circuit, "weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility."

---

[5] Defendant attached the investigative file as an exhibit to its motion for summary judgment [Doc 51-1 pp. 78–83].

*L.E. Cooke Co.*, 991 F.2d at 342 (citations omitted); *see also Andler*, 670 F.3d at 729 (explaining that "it is not proper for the Court to exclude expert testimony merely because the factual bases for an expert's opinion are weak" (citation omitted)). Hence, the Court finds Plaintiff's arguments are more appropriate for cross examination of McRae; any alleged omissions can be adequately addressed through cross examination. *Nelson*, 2022 WL 1401529, at *5 (explaining that "it is the role of the jury, not this Court, to determine whether [the expert] used the right information and came to credible results" (citation omitted)).

### C. Whether McRae's Opinions Usurp the Jury's Role

Plaintiff asserts that McRae's opinions should be excluded because she opines on legal issues, provides legal citations, engages in legal analysis, and attempts to usurp the role of the jury and resolve factual disputes.[6] He advances several reasons for this argument.[7] First, Plaintiff states that McRae reviewed documentation from Rubi's investigation and cherry picked facts while disregarding or omitting other material facts. Second, McRae concludes that Defendant's investigation was sound and the termination of Plaintiff's employment was appropriate, but whether Defendant's decision to terminate Plaintiff's employment was motivated by disability and age discrimination is a fact-driven inquiry that requires consideration of material facts as well as

---

[6] In this section of his brief, Plaintiff also argues that Defendant has conclusively admitted that every reason proffered by it for terminating Plaintiff was pretextual, relying on Defendant's unanswered RFAs. As explained above, *see supra* note 2, the Court finds that it is not necessary to address this argument.

[7] Earlier in his brief, Plaintiff states that McRae "concedes that her opinions and conclusions rely upon the EEOC guidance materials referenced in her report" and her experience [Doc. 55 p. 4]. Plaintiff adds, "McRae's report states her opinion is derived from judicial decisions, regulations, and other guidance issued by government agencies and scholarly research" [*Id*.]. But Plaintiff does not explain why these statements support excluding McRae from testifying in this case. As the Court previously explained, *see supra* Section IV.A., other courts have admitted expert testimony that relies on similar sources. Further, other than McRae's opinions that the Court will exclude, Plaintiff has not identified additional areas that constitute legal conclusions.

14

Case 3:20-cv-00380-CEA-JEM   Document 77   Filed 11/21/22   Page 14 of 20   PageID #: 1425

disregard of immaterial facts. Plaintiff asserts that McRae did not consider all the material facts, including whether other non-disabled or younger employees engaged in similar conduct and were not disciplined or subject to an investigation. Third, Plaintiff claims that McRae interprets Defendant's policy and attempts to render factual conclusions on disputed issues of fact. Finally, Plaintiff states that McRae's interpretation of Defendant's investigation of Plaintiff and related policies are not based on specialized knowledge or statistical analysis.

Defendant denies that McRae renders any conclusions regarding Plaintiff's claims of discrimination and asserts that it did not retain McRae to render such opinions. Instead, McRae's report and proposed testimony "are limited in scope to reviewing and analyzing [Defendant's] internal investigation policies and procedures, determining whether those policies and procedures are consistent with industry standards, and determining whether those policies and procedures were followed in this case" [Doc. 60 p. 13].[8] Defendant therefore asserts that her role is to "assist the jury in understanding the intricacies of sound human resource, ethics, and compliance policies, and to opine as to whether [Defendant's] investigation of the allegation of sexual assault made against Plaintiff was conducted in an appropriate manner" [*Id.*]. Defendant does not intend to offer her testimony to reach any legal conclusions, and it asserts that her report does not do so.

Although Plaintiff claims that McRae cherry picked the facts, he does not explain the facts that McRae cherry picked nor how her doing so affects the reliability of her opinions. Indeed, Plaintiff's arguments are largely repetitive of the argument that McRae failed to consider all the material facts, but as explained above, *see supra* Section IV.B., Plaintiff may cross examine

---

[8] More specifically, her report reflects that she was "retained . . . to review relevant information and provide an opinion as to whether the policies and practices of [Defendant] with respect to conducting workplace investigations are consistent with generally accepted human resources practices. [She] was also retained to provide an opinion as to whether the application of those policies and practices in the circumstances of this case was consistent with generally accepted human resources practices." [Doc. 60 p. 13].

McRae to the extent he believes McRae did not consider certain evidence (i.e., Tallent's deposition testimony or comparator evidence or that Defendant did not have a policy about overnight stays at an Airbnb). In other words, this assertion, even if true, is not a basis to exclude McRae. *L.E. Cooke Co.*, 991 F.2d at 342.

Plaintiff states that McRae's interpretation of Defendant's investigation and related policies is not based on any specialized knowledge or statistical analysis and that the jury is fully capable of resolving the factual issues without McRae's assistance. As an initial matter, there is no requirement that an expert opinion must be based on a statistical analysis. Further, the Court finds that McRae has specialized knowledge in light of her decades of experience in human resources in various roles [*See* Doc. 60-2 p. 2]. *EEOC v. Autozone, Inc.*, No. CV-06-1767-PCT-PRG, 2008 WL 5245579, at *3 (D. Ariz. Dec. 17, 2008) ("McRae's 24-year career in labor and employment law renders her qualified for purposes of Fed. R. Civ. Evid. 702."). Moreover, "numerous courts have permitted extensive testimony by human resources experts." *Sitter v. Ascent Healthcare Sols., Inc.*, No. C-09-5682 EMC, 2011 WL 2682976, at *1 (N.D. Cal. July 8, 2011) (citations omitted); *see Nelson*, 2022 WL 1401529, at *5 (finding that the expert's "opinions will help a jury in deciding this case [because] [a] reasonable juror, seeing that a company deviated substantially from established industry norms which are meant to prevent discrimination, could infer intent to allow discrimination" (citation omitted)); *Mueller v. Daugherty Sys., Inc.*, No. 1:18-CV-3358-MLB, 2021 WL 3754582, at *8 (N.D. Ga. June 14, 2021) (finding that expert testimony regarding the standards of care applicable to internal workplace investigations and whether the defendant's internal investigation fell below uniformly adopted minimum standard practices would assist the jury in determining whether the defendant's stated reasons for plaintiff's termination were legitimate or pretextual); *Saldana*, 2015 WL 3952328, at *3 (allowing the expert to testify that the defendant did not act consistently with generally accepted human resources

16

practices); *Ferretti v. Pfizer Inc.*, No. 11-CV-04486, 2013 WL 140088, at *20 (N.D. Cal. Jan. 10, 2013) (concluding that expert testimony regarding the defendant's compliance with generally accepted human resources standards was admissible, in part, for purposes of summary judgment); *Pittman v. Gen. Nutrition Corp.*, No. CIV. A. H-04-3174, 2007 WL 951638, at *5 (S.D. Tex. Mar. 28, 2007) (concluding that the disputed expert may testify that the defendant's "conduct was inconsistent with what he deems prevailing human resources standards or [the defendant's] own personnel policies, but may not testify that certain facts show an intent to discriminate or retaliate, show 'discrimination,' or show 'pretext'"); *see also Barber v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, No. 3:05-CV-142-R, 2007 WL 121350, at *3 (W.D. Ky. Jan. 12, 2007) (allowing disputed expert to testify to "how employment-at-will issues are dealt with in human resource departments").[9]

Finally, Plaintiff contends that McRae's opinions usurp the role of the jury because she reaches a conclusion that Defendant conducted a sound investigation and that Defendant's decision to terminate was appropriate. Pursuant to Federal Rule of Evidence 704, "An opinion is not objectionable just because it embraces an ultimate issue." But an expert may not render legal conclusions. *United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016) (explaining that "[a]n expert offers a legal conclusion when he defines the governing legal standard or applies the

---

[9] In support of his argument, Plaintiff cites to one case, *Moisenko v. Volkswagenwerk Aktiengesellschaft*, 198 F.3d 246, 1999 WL 1045075 (6th Cir. 1999) (table opinion). In *Moisenko*, the Court acknowledged that Rule 403 applies to expert testimony and that because expert testimony "can be both powerful and misleading[,]" courts must "exercise[] more control over experts than over lay witnesses." *Id*. at *4 (quoting *Daubert*, 509 U.S. at 595) (citation omitted)). To the extent Plaintiff argues McRae's opinions usurp the role of the jury because they are unnecessary, irrelevant, and likely to confuse or mislead the jury under Rule 403, the Court finds Plaintiff's argument not well taken. McRae's opinions are prohibitive of the issues in this case given that Plaintiff has put at issue how Defendant conducted the investigation, *see supra* Section IV.A. Further, Plaintiff can cross examine McRae as to the factual basis of her opinions if Plaintiff believes that McRae attempts to resolve factual issues, *see supra* Section IV.B.

standard to the facts of the case" (citations omitted)). A legal conclusion is not helpful to the jury because it merely instructs the jury in what verdict to reach. *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997).

Here, McRae concludes, "In summary, in my expert opinion, Defendant conducted an investigation that met generally accepted human resources practices, made findings consistent with the information gathered, and took action consistent with the findings" [Doc. 60-2 p. 9]. The Court finds McRae's testimony that Defendant conducted an investigation consistent with generally accepted human resources standards does not usurp the jury's role. *See Saldana*, 2015 WL 3952328, at *3 (finding that while the expert's opinion that the defendant did not follow generally accepted human resources practices embraced an ultimate issue in accordance with Rule 704, it was not an impermissible legal conclusion). But her opinions that Defendant made findings consistent with the information gathered and took action consistent with the findings are a much closer call. It seems that the jury can determine (1) whether Defendant made findings consistent with the information it gathered and (2) whether it took action consistent with those findings. The Court will therefore exclude these two opinions. *Brightwell v. Bandera Cnty.*, No. SA-16-CA-1216-XR, 2017 WL 5346393, at *8 (W.D. Tex. Nov. 13, 2017) (explaining that the expert "may not assess, evaluate, or confirm [the defendant's] decision to terminate" because "[s]uch opinions invade the province of the jury"); *Barber*, 2007 WL 121350, at *3 (excluding expert's opinion that defendant "had legitimate business reasons for terminating the [p]laintiffs and that he found no evidence of retaliation").

D.  **Whether McRae's Opinions are Excludable Under Rule 403**

Plaintiff asserts that McRae purposefully and prejudicially describes Buhler's complaint, which includes accusations of criminal sexual behavior, in detail "as if fact" [Doc. 55 p. 12]. Despite McRae acknowledging in her report that the investigation brought into question Plaintiff's

18

compliance with business conduct polices and related expenses, Plaintiff asserts McRae's report and testimony "will place the proverbial skunk" of criminal sexual allegations "in the jury box" [*Id.*]. Thus, Plaintiff argues, McRae's opinion and testimony is inadmissible under Rule 403 and should be precluded.

Defendant denies such references are prejudicial. As an initial matter, it notes that Buhler's detailed complaint was the genesis of the investigation and that "Defendant had no option but to thoroughly investigate the allegation because it was the right thing to do and because it risked serious legal exposure if it did not" [Doc. 60 p. 15]. Defendant also notes that Plaintiff disclosed the alleged assault in his Amended Complaint and he discussed the alleged assault during his deposition. It is Defendant's position that "McRae's report references the allegation not to comment on its veracity, but to highlight the importance of [Defendant's] immediate commencement of an investigation to comply with its own policies and procedures" [*Id*. at 16 (emphasis omitted)]. Defendant further asserts that "if Plaintiff believes that discussion of the alleged assault (or even the allegation) will be prejudicial to his case, the appropriate remedy is a motion *in limine* on that specific issue, rather than an attempt to exclude McRae's report and testimony in their entirety" [*Id*.].

Based upon the information before the Court, it seems that the parties agree that Defendant received a letter dated July 1, 2019, from an attorney for Buhler alleging that Plaintiff sexually assaulted her and that this letter triggered Defendant's investigation. Given that, there is a reasonable basis for McRae detailing Buhler's complaint in the factual background section of her expert report [Doc. 60-2 pp. 3–4]. At the heart of Plaintiff's argument is whether Buhler's complaint is admissible. But the undersigned finds this issue premature at this juncture because there has not been a ruling on whether Buhler's complaint, in its entirety, is admissible. *Fakhoury v. O'Reilly*, No. 16-13323, 2022 WL 909347, at *1 (E.D. Mich. Mar. 28, 2022) (explaining that a

19

court should only exclude evidence "when that evidence is determined to be clearly inadmissible on all potential grounds" (citation omitted)). Thus, whether the probative value of this information "is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403, is better left for a motion in limine. *Trice v. Napoli Shkolnik PLLC*, No. CV 18-3367 ADM/KMM, 2020 WL 4816377, at *13 (D. Minn. Aug. 19, 2020) (finding the defendant's arguments that the expert's opinions are inadmissible under Rule 403 were "more properly raised in a motion in limine"); *In re Se. Milk Antitrust Litig.*, No. 2:07-CV 208, 2011 WL 2749579, at *1 (E.D. Tenn. July 14, 2011) (finding that the defendant's motion is not an issue that "would ordinary be raised in a Daubert motion but raises a question of the admissibility of evidence[,]" which was "more appropriately suited for a motion *in limine*").

## IV. CONCLUSION

For the reasons explained above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion *in Limine* to Preclude the Expert Report and Opinion Testimony of Ginger McRae, SPHR, SHRM-SCP [**Doc. 54**]. McRae may testify as to the opinions in her expert report [Doc. 60-2], but she cannot testify that Defendant made findings consistent with the information it gathered nor that Defendant took action consistent with the findings.

**IT IS SO ORDERED.**

ENTER:

_____
Jill E. McCook
United States Magistrate Judge